UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

XYMOGEN, INC., an Illinois
Corporation,

       Plaintiff,

v.                                CASE NO. 6:15-cv-2047-Orl-28DAB

SHOPME INC., a Florida corporation,

       Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS COMPLAINT
## AND INCORPORATED MEMORANDUM OF LAW

    Defendant, SHOPME INC. ("Shopme"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01, hereby moves to dismiss all Counts asserted in the Complaint by Plaintiff, XYMOGEN, INC. ("Xymogen") and, in support, states as follows:

## INTRODUCTION

    This case arises from Shopme's alleged sale of Xymogen products online. Xymogen asserts that Shopme improperly procured its products from another customer, an individual named Louise Brensike, who had previously entered into a Customer Protection Agreement with Xymogen which precluded ***Brensike*** from "sell[ing] or resell[ing] any products through a re-seller or retailer." [Doc. 1, ¶ 26].

    On the facts alleged, Xymogen's remedy, if any, for any unauthorized sales of its product to Shopme seems to be a straightforward claim for breach of contract against Brensike. Curiously, however, Xymogen is not suing her. Instead, Xymogen alleges attenuated and inherently flawed claims against Shopme, who has no contract with Xymogen. Specifically,

Xymogen alleges claims against Shopme for false designation of origin (Count I), common law trademark infringement (Count II), common law unfair competition (Count III), tortious interference with the Customer Protection Agreement (Count IV), and injunctive relief (Count V), all of which are premised upon Shopme's sale of Xymogen products online.

Even assuming that Xymogen's allegations are true, none of these counts states a cause of action against Shopme. Fatal to Counts I, II, III and V are the allegations that Shopme has merely resold genuine Xymogen products which Xymogen intentionally first sold to Brensike, which, if true, would be completely legal under the well-established "first sale doctrine." These counts should be dismissed with prejudice.

Additionally, Count IV must be dismissed because Xymogen has not properly pled a claim for tortious interference under the federal pleading standard. The claim is unsupported by any facts and even fails to adequately identify the contractual provision upon which the claim is premised.

## FACT ALLEGATIONS

Xymogen alleges that it sells nutritional and dietary supplements to healthcare practitioners and their patients. [Doc. 1, ¶ 6]. Xymogen alleges that it owns and uses registered trademarks for these products. [*Id.* at ¶¶ 11-20].

Xymogen claims that at the time it sells supplements, Xymogen and its customer enter into a "Customer Protection Agreement," pursuant to which the customer agrees that it will not sell Xymogen's products on the internet unless certain conditions are met. [*Id.* at ¶ 8]. The only conditions alleged by Xymogen are that the customer's web page must be password protected and the customer must post a certain disclaimer. [*Id.*] The customer also can recommend and sell the Xymogen products to their patients. [*Id.* at ¶ 9]. Xymogen alleges that two of goals of

the Customer Protection Agreement are (1) to protect customers from contaminated and counterfeit supplements; and (2) to protect the healthcare practitioner and his exclusive relationship with Xymogen. [*Id.* at ¶ 10].

Xymogen alleges that Shopme does <u>not</u> have a Customer Protection Agreement with Xymogen. [*Id.* at ¶ 23]. Instead, Xymogen alleges that a third party, Louis Brensike, entered into a Customer Protection Agreement with Xymogen on August 26, 2011 (the "Brensike Agreement"). [*Id.* at ¶ 24]. Xymogen does not attach the Brensike Agreement to its Complaint, does not allege the term or duration of the Brensike Agreement, and does not allege any specific language in the Brensike Agreement. [*See id.*]. The only allegation concerning the terms of the Brensike Agreement is Xymogen's allegation that "Brensike agreed, among other things, that she would not sell or re-sell any products through a re-seller or retailer." [*Id.* at ¶ 26].

Xymogen alleges that Shopme procured Xymogen products from Brensike, and then later sold those products online through various websites. [*Id.* at ¶ 28]. Without alleging any supporting facts or any relationship between Shopme and Brensike, Xymogen conclusorily alleges that Shopme "had knowledge of the Brensike Agreement." [*Id.* at ¶ 27].

## ARGUMENT

I. <u>Counts I, II, III And V Are Barred By The First Sale Doctrine.</u>

Xymogen's claims against Shopme for false designation of origin, trademark infringement, unfair competition an injunctive relief are each premised upon the same lawful activity: Shopme's alleged resale of products Xymogen previously sold to a third party, Brensike. These claims are unquestionably barred by the first sale doctrine.

"Under the 'first sale' doctrine, a trademark owner loses its right of control over the use and distribution of the item on which the trademark is affixed once the item is released into the stream of commerce." *Ford Motor Co. v. O.E. Wheel Distributors, LLC*, 868 F. Supp. 2d 1350,

3

1369 (M.D. Fla. 2012) (quoting *BMW of N. Am. v. Au-tomotive Gold, Inc.*, 1996 WL 1609124, at *6 (M.D. Fla. 1996)). "At that point, the trademark owner relinquishes its ability to prevent the use or sale of the items upon which the trademark is affixed." *Id.* "The owner's 'first sale' constitutes an implicit authorization for purchasers of those products to use them for any legitimate purpose, including using those products as "component part[s] of a separate, distinct product." *Id.*

Indeed, even the resale of genuine trademarked goods after a legitimate sale to another party does not constitute a violation or infringement "for the simple reason that consumers are not confused as to the origin of the goods: the origin has not changed as a result of the resale." *Davidoff & CIE, S.A. v. PLD Intern. Corp.*, 263 F.3d 1297, 1301-02 (11th Cir. 2001). Therefore, "<u>even though a subsequent sale is without a trademark owner's consent</u>," the resale of a <u>genuine good</u> is not actionable. *Id.* The first sale doctrine applies to the claims alleged here under federal law and Florida common law. *See Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 801 (11th Cir.2003) ("[T]he analysis of Florida statutory and common law claims for trademark infringement and unfair competition is the same as under the federal trademark infringement claim[.]"); *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1359 (S.D. Fla. 2012) (where claims under the Lanham Act were barred by first sale doctrine, they were also barred under Florida common law).

Xymogen's own allegations show that each of its claims for false designation of origin, trademark infringement, unfair competition, and injunctive relief is barred under the first sale

4

doctrine.[1]  All these claims are based solely on the allegations that Shopme resold goods provided by Xymogen to another third party.  Xymogen alleges that it intentionally sold goods to Brensike pursuant to the Brensike Agreement.  [Doc. 1 at ¶¶ 24 & 25].  Xymogen alleges that Shopme then purchased and resold these goods.  [*Id.* at ¶ 28].  Notably, Xymogen does not allege that the products sold by Shopme were altered or different in any way, counterfeit, or for any reason not genuine Xymogen products. [*See generally id.*].  The only reasonable reading of the allegations in the Complaint is that Shopme sold *genuine* Xymogen products it purchased through one of Xymogen's direct and authorized customers.

As the Eleventh Circuit pointed out, the conduct of Shopme alleged here is not actionable because in the circumstances presented here, consumers are not confused as to the origin of the goods because the origin has not changed.  *See Davidoff*, 263 F.3d at 1301-02.  Under the first sale doctrine, Xymogen lost its right of control over the use and distribution of its products once it was released into the stream of commerce.  *See Ford Motor Co.*, 868 F. Supp. 2d at 1369.  Indeed, it would be impossible for Xymogen to argue otherwise, given its allegations that its

---

[1] To establish a claim for Florida trademark infringement and unfair competition, a plaintiff must establish "(1) the deceptive or fraudulent conduct of a competitor and (2) a likelihood of consumer confusion."  *Ordonez v. Icon Sky Holdings LLC*, 10-60156-CIV, 2011 WL 3843890, at *5 (S.D. Fla. 2011).  The false designation of origin claim under federal law has substantially the same elements, requiring the plaintiff to establish that: "(1) the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." *Brain Pharma*, 858 F. Supp. 2d at 1355-56.
 All of these claims are subject to the first sale doctrine.  *See id.* at 1355-56 & 1359 (finding that these same three federal and Florida common law claims alleged here were barred by the first sale doctrine where goods were merely resold).  Xymogen's claim for injunctive relief which is also premised upon trademark infringement and the "likelihood of confusion" of consumers, is barred for the same reasons. [*See* Doc. 1 at ¶¶ 50-57].

5

direct customers like Brensike can resell the items under certain basic conditions. [Doc. 1 at ¶ 8].

In fact, Xymogen's own stated goals in contractually limiting the resale of its products are not even affected by Shopme's alleged actions here. Xymogen alleges resale restrictions are intended to protect its direct customer and to protect consumers from "contaminated and counterfeit supplements." [*Id.* at ¶ 10]. Certainly Brensike was not harmed here, as she is alleged to have intentionally sold the products to Shopme. The end consumers are also not harmed by the resale activity alleged here, as only genuine goods were resold. Again, Xymogen alleges that Brensike herself could have resold these products directly to the same consumers on the internet had she met some basic conditions in her contract with Xymogen.[2]

Under the facts pled, Counts I, II, III and V of the Complaint fail under the first sale doctrine. *See id.*; *Ford Motor Co.*, 868 F. Supp. 2d at 1369; Brain Pharma, 858 F. Supp. 2d at 1359. They should be dismissed with prejudice.

II.  <u>Count IV Must Be Dismissed Because It Fails To State A Claim Upon Which Relief May Be Granted Or Even Adequately Inform Shopme As To Its Factual Basis.</u>

Xymogen has not pled sufficient facts in support of its claim for tortious interference with a contract. As the Supreme Court announced in *Twombly,* "a plaintiff's obligation to provide 'the grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. . . . " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). If the Supreme Court's ruling in *Twombly* left any doubt as

---

[2] In fact, Xymogen does not allege that the resale of the product by Shopme was not in accordance with the conditions in the Brensike Agreement.

to the requirements for adequately pleading a cause of action, the Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) firmly resolved any such doubts: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal* at 678, citing *Twombly*. To determine the adequacy of a complaint, the Eleventh Circuit explained in *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136 (11th Cir. 2011) that the District Court should first disregard all conclusory allegations and then test the adequacy of the complaint based solely on the allegations of fact:

> In applying the Supreme Court's directives in *Twombly* and *Iqbal* to a motion to dismiss, the Eleventh Circuit has instructed that a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*Id*. at 138 (brackets, internal citations, and quotation marks omitted); *see also Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1281-82 (11th Cir. 2015).

Indeed, the Eleventh Circuit made clear in *Duty Free Americas* that a plaintiff attempting to assert a claim for tortious interference is "obliged to support its allegation with facts." 797 F.3d at 1281. There, the Court affirmed dismissal of a claim for tortious interference where the complaint merely established that a company sold products and provided its customers with truthful information, without any facts plausibly suggesting an intent to interfere or any impropriety on the part of the defendant. *Id.* at 1281-82.

Like the complaint in *Duty Free Americas*, Xymogen's Complaint in this case boils down to a claim that Shopme sold genuine Xymogen products. It does not give any suggestion of impropriety and does not state a claim for tortious interference.

A claim for tortious interference requires a plaintiff to allege "(1) the existence of an

7

enforceable contract, (2) the defendant's knowledge of that contract, (3) an intentional and unjustified interference by the defendant with the plaintiff's rights under the contract, and (4) resulting damages." *FSC Franchise Co., LLC v. Express Corp. Apparel, LLC*, 809-CV-454-T-23TGW, 2009 WL 3200656, at *3 (M.D. Fla. 2009). Incredibly, outside of alleging that a contract exists, the Complaint falls short of asserting any specific fact to support *any* other required element of its claim.

Xymogen's recitation of the bare elements of a tortious interference claim does not suffice. Reading out any legal conclusions, as the Court must, the Complaint is left with no facts supporting its claim. *See Kivisto*, 413 F. App'x at138. The Complaint alleges that Shopme had knowledge of the Brensike Agreement, but does not explain how or even explain any relationship between Brensike and Shopme. [*See* Doc. 1 at ¶¶ 27 & 45]. Xymogen does not even try to establish any motive or intent to interfere with the Brensike Agreement. [*See generally id.*]. For example, Xymogen does not allege that Shopme somehow benefitted from interfering with the contract or by procuring product directly from Brensike as opposed to simply contracting with Xymogen to buy the products directly. Xymogen has not met its simple burden to support its claim with facts plausibly suggesting an "intentional and unjustified interference," calling for dismissal of this claim. *See Duty Free Americas*, 797 F.3d at 1281-82

Moreover, Xymogen does not even explain how Shopme interfered with the Brensike Agreement or what breach Shopme procured, as Xymogen failed to attach the contract or quote any language from the contract. Xymogen asserts that the resale of its products is prohibited by the Customer Protection Agreement, but there is no way for Shopme, a non-party to the Brensike

8

Agreement, to know if any of the terms of the contract have even been breached, or if the contract is even valid.[3]  Without knowing what the Brensike Agreement even says, it is impossible for Shopme to evaluate the claims against it, determine what defenses, if any, it may have arising out of the contract itself, or properly respond to the claims alleged.  Count IV of the Complaint simply fails to state a claim and must be dismissed.  *See id.*; *Twombly*, 550 U.S. at 545; *Iqbal*, 556 U.S. at 678.

WHEREFORE, Shopme, Inc. respectfully requests that the Court: (a) grant this motion; (b) dismiss Counts I, II, III and V of the Complaint with prejudice; (c) dismiss Count IV of the Complaint; and (d) grant any and all other further relief as deemed just and proper.

Respectfully submitted this 14th day of March, 2016.

*s/ Michael R. Levin*
**MICHAEL R. LEVIN**
Florida Bar No. 351326
mlevin@bakerlaw.com
Secondary: smccoy@bakerlaw.com
 Orlbakerdocket@bakerlaw.com
**KRISTA A. SIVICK**
Florida Bar No. 59518
ksivick@bakerlaw.com
Secondary: jdorn@bakerlaw.com
**BAKER & HOSTETLER LLP**
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, Florida 32801
Telephone (407) 649-4000
Facsimile (407) 841-0168

*Attorneys for Defendant, Shopme, Inc.*

---

[3] While the allegations of the Complaint must be taken as true for the purposes of this Motion, Shopme actually has not seen the Brensike Agreement or any other Customer Protection Agreement, does not know Brensike, and has not bought any Xymogen products from her.

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on March 14, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing and copy to:

**JOHN A. SCHIFINO**
jschifino@burr.com
**HARVEY S. KAGUET**
hkauget@burr.com
**BURR & FORMAN LLP**
P.O. Box 380
Tampa, Florida 33601

*Attorneys for Plaintiff, Xymogen, Inc.*

    *s/ Michael R. Levin*
    Michael R. Levin

608485761.2